## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GARY LEE PULLEN,
    Plaintiff,

  vs.

DIRECTOR GARY C. MOHR, *et al.,*
    Defendants.

Case No. 1:18-cv-386

Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

       Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), has filed a sixty-nine page, pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff brings this action against seventy-seven defendants, including various prison officials at SOCF, the Warren Correctional Institution (WCI), and the Ohio Department of Rehabilitation and Correction (ODRC). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

       In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.; see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v.*

*Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286

2

(1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the complaint, plaintiff alleges that on July 19, 2016 defendant C/O Sears became angry with plaintiff based on prior dealings with plaintiff's brother, Terry Pullen. According to plaintiff, Sears stated "I hope you ain't nothing like your bitch ass brother because if you are, I'm going to take my PR-24 and fuck your bitch ass with it." (Doc. 1-1, Complaint at PageID 16). Plaintiff indicates that he reported the incident to the PREA (Prison Rape Elimination Act) hotline on July 29, 2016. Plaintiff claims that in August defendant PREA manager Chuck Smith came to his cell to discuss the incident and plaintiff told Smith that he feared for his life. (*Id.* at PageID 17). Plaintiff alleges that although Smith stated that he would turn the PREA report over to defendant investigator Mr. Miller, plaintiff alleges Smith never turned over the report or Miller ignored it.

Plaintiff alleges that Sears and his partner, defendant C/O Crabtree, were subsequently informed of plaintiff's PREA complaint. According to plaintiff, in late December 2016, Crabtree began to deny plaintiff showers and turn off the water to his cell. Plaintiff further alleges that Crabtree falsely accused him of flooding his cell during this time. (*Id.* at PageID 18). Plaintiff claims that Crabtree and Sears made "sexual threatening remarks" toward him and/or harassed him for calling the PREA hotline on Sears. Plaintiff claims he informed ~~defendants~~ mental

3

health liaison Mr. Parsons and Dr. Ford of Sears and Crabtree's behavior and that he feared for his life, was having suicidal thoughts, and was hearing voices as a result. (*Id.* at PageID 18–19). Plaintiff claims that he requested to be admitted to the Residential Treatment Unit (RTU), but Ford and Parsons told him that he did not qualify for RTU placement. (*Id.* at PageID 19, 29–30).

On January 7, 2017, plaintiff alleges that defendant Sgt. Dillow and Crabtree came to the K4 block to hear conduct reports. Plaintiff claims that the conduct report hearings were conducted in front of the cells of the other inmates. However, plaintiff was escorted to Sgt. Dillow's office for his hearing. In Dillow's office, plaintiff claims that Crabtree tackled him and punched him in the face, before Sears entered the office and bent plaintiff over Dillow's desk. (*Id.* at PageID 20). According to plaintiff, Crabtree then pulled down plaintiff's pants, stated "we are tired of you and your brother (Terry Pullen) around here, you want to call PREA," and then "pulled his PR-24 and shoved it (PR-24) into [plaintiff's] buttocks." (*Id.*). Plaintiff claims that Dillow then told him "we are going to bring you in this office every time you call PREA and beat your ass and the[re] are no cameras in here and if you report it [it] will come straight to me." (*Id.*). Plaintiff claims that he reported the incident to defendant captain Howard, who stated that he would have medical come to check him out, but no one came.

With respect to medical treatment following the incident, plaintiff alleges that defendant nurse practitioner Mr. Conley "improperly examine[d] and reported the plaintiff injuries" and did not order that plaintiff be taken to an outside emergency hospital. (*Id.* at PageID 29). Plaintiff claims defendants Claggs, Warren, Joiner, Tipton, and Mr. Ross instead "conspired to cover–up the plaintiff's sexual assault injuries by throwing away plaintiff's health form request slip . . . and by kicking plaintiff out of the infirmary visits multiple times and denying plaintiff medical treatment for plaintiff's sexual assault injuries." (*Id.*). In an ICR attached to the complaint as an

4

exhibit, plaintiff claims that his injuries were not examined for three days following the incident. (*Id.* at PageID 67).  Plaintiff further claims that defendants Smith, Miller, and Mahlman "did not adequately notif[y] medical of the plaintiff['s] sexual assault injuries."  (*Id.* at PageID 29).

Plaintiff claims that he was transferred to the K1 block following the incident.  He claims that upon his arrival, defendant officers Dunlap and Bradley greeted him by saying "Here he is 'I got raped.'"  (*Id.* at PageID 21).  Plaintiff claims he received "verbal sexual retaliation threats" from Bradley and Dunlap, which plaintiff claims were "in regards to the 1-7-2017 sexual assault."  (*Id.*).  Plaintiff alleges that "upon information and belief Sgt. Dillow, C/O Crabtree and C/O Sears called C/O Bradley and C/O Dunlap . . . alerted them what the plaintiff reported and order them . . . to repay plaintiff with (harassment)."  (*Id.*).

On February 1, 2017, plaintiff claims that investigator Miller met with plaintiff. According to plaintiff, Miller told him that he had him moved to the K1 block, but that his investigation was inconclusive.  Plaintiff alleges that Miller stated he would keep the case open in the event plaintiff was retaliated against for reporting the sexual assault. (*Id.* at PageID 21–22).  Plaintiff claims he informed Miller that Bradley and Dunlap were harassing him and Miller said that he would try to find a location to transfer him to, noting that the number of possible cell locations were limited due to plaintiff needing electricity to run his CPAP machine.  (*Id.* at PageID 22).

Next, on February 2, 2017, plaintiff claims he complained to defendant Lt. Smith about Bradley and Dunlap's refusing plaintiff showers and making "verbal sexual comment[s]" to him. (*Id.*).  Plaintiff claims that Smith became irate with plaintiff and "took me to segregation as a means to further harass me."  (*Id.*).  According to plaintiff, Smith and defendant C/O Holbrook strip searched him upon entering segregation and made "sexual comment pertaining to the 1-7-

2017 (Sexual Incident)" and "were trying to humiliate me by making me (stand in certain positions in sexual nature) while they tormented me about what C/O Crabtree, C/O Sears and Sgt. Dillow [did] to me on 1-7-17." (*Id.* at PageID 23). Plaintiff claims that he felt emotionally hurt and suicidal as a result and went on suicide watch and a hunger strike.

The hunger strike lasted from February 2, 2017 to February 26, 2017. During this time, plaintiff claims that he requested to be moved to a location not supervised by Sgt. Dillow from defendant Chief Unit Manager Cynthia Davis. According to plaintiff, he claims he was subsequently transferred to the J4 block, which he describes as a mixed population with both general population and mental health inmates. Plaintiff claims that his cell did not have electricity though, so he was unable to use his CPAP machine. Plaintiff claimed that he filed an informal complaint to defendants Mental Health Administrator Mrs. Salyers and Warden Erdos.

"Upon information and belief," plaintiff claims that he was retaliated against while in the J-4 block which he claims "was a direct result of guards (C/Os) who sexual and assaulted the plaintiff, on K-side (K4 Block) which led the plaintiff to report the sexual assault and assault to the PREA hotline and family members." (*Id.* at PageID 24). Plaintiff alleges that defendant C/O Hill told him "fuck you Pullen I remember when I (C/O Hill) watched you on suicide watch and you told me Sgt. Dillow, C/O Crabtree stuck my PR24 up your ass; so Pullen shut-up and suck my dick." (*Id.*).

Plaintiff claims that he filed an ICR against Hill on April 25, 2017, but it was intercepted by C/O Campbell.[1] Plaintiff further claims that Campbell gave the ICR back to Hill, who allegedly threatened to transfer him to the K5 Block. According to plaintiff, on May 16, 2017, he contacted defendants Mr. Sparks and Mr. Smith and "requested to report" Hill's comment.

---

[1] C/O Campbell is not named as a defendant to this action. (*See* Doc. 1-1, Complaint at PageID 11–15).

(*Id.*). When they allegedly refused, plaintiff indicates he filed a grievance against Sparks and Smith.

Next, on June 8, 2017, plaintiff claims he met with defendants Dr. Rogers and mental health nurse Mr. Penix. (*Id.* at PageID 25). Plaintiff claims that while discussing the January 7, 2017 assault with Rogers, defendant C/O Gladman—who was also in the room—interrupted him and said "shut the fuck up we are tired of you coming in here complaining about how you feel about being sexual[ly] assaulted by Sgt. Dillow and Crabtree call PREA." (*Id.*). Although plaintiff claims this was the first time he was able to talk to Rogers about the January 7, 2017 incident, he claims Rogers also stated that he was sick of hearing about plaintiff's "PREA (sexual assault) bullshit." (*Id.*). Plaintiff further claims that Rogers took him off his Haldol medication. According to plaintiff, he requested that Rogers ask Gladman not to interrupt him, to which Rogers replied, "you don't have no right to tell me, to ask C/O Gladman to stop interrupting you, you (Plaintiff) need to stop playing these games with PREA allegations and your medication and as far as I'm (Dr. Rogers) is concerned get out of my office your (sic) not getting anything to help you with the voices call PREA." (*Id.*). Plaintiff requested to call the PREA hotline, but Gladman escorted him out of the office and issued him a conduct report for disrespect and creating a disturbance. (*Id.* at PageID 26).

On June 16, 2017, plaintiff claims defendant C/O Johnson escorted plaintiff to defendant Sgt. Smoot's office to make a PREA call concerning Gladman and Rogers. Plaintiff claims he requested to make the call in private, which was denied by Smoot. Plaintiff further claims that Johnson denied him a shower three days later, noting that "C/O Dunlap and I (C/O Johnson) had a conversation about you calling PREA on us, so we not giving to give you no shower." (*Id.*). Plaintiff claims he filed an ICR on Johnson, Dunlap, and Smoot regarding the incident.

On July 28, 2017, plaintiff claims that Smoot responded to a call that plaintiff was suicidal. According to plaintiff, Smoot ordered him to put on a suicide gown but plaintiff refused. Smoot allegedly then sprayed him with O/C spray, noting "I'm sick of you Pullen you reported PREA on me." (*Id.* at PageID 27).

Plaintiff also claims that on August 2, 2017, during his hunger strike, he encountered additional retaliation as a result of reporting the January 1, 2017 sexual assault. On that day he claims that defendant Sgt. Bear and Crabtree tried to trick him into going to Bear's office, which plaintiff claims is a blind spot outside the view of cameras. Plaintiff claims that after he refused, Crabtree deployed O/C spray into his face and stated "Pullen you can't hide from me you called PREA on me, I'm going to get you every time." (*Id.* at PageID 28). According to plaintiff, Bear subsequently fabricated conduct reports to justify his and Crabtree's actions. Plaintiff claims that he informed defendants Miller, Smith, and Mahlman of his issues but they ignored him.

Plaintiff next claims that he received inadequate medical care before and following the January 7, 2017 assault. (*See id.* at PageID 29). Plaintiff claims that he met with defendants Parsons and Ford prior to January 7, 2017 assault and requested RTU placement. He further alleges that he met with them in April, following the alleged attack, and that they became argumentative with him. (*Id.* at PageID 30). Plaintiff claims that in June 2, 2016, defendant Salyers informed him that there were no mental health programs to offer plaintiff. (*Id.*). According to plaintiff, he informed Salyers that he was only receiving one mental health group meeting per week in March of 2017 in the J4 unit, although he was supposed have three to four groups a week. (*Id.* at PageID 31). Plaintiff claims that Salyers subsequently conspired with defendants Rogers, Gladman, Smoot, and Sparks to get plaintiff kicked out of the J4 unit because he filed ICRs against "the J4 mental health establishment." (*Id.*).

8

Plaintiff next claims he was denied the use of his CPAP machine at SOCF. (*Id.* at PageID 32–34). Plaintiff alleges that this resulted in him going on suicide watch on July 5, 2017. (*Id.* at PageID 32). Plaintiff further alleges that he collapsed after being denied use of the machine, was given a rules infraction violation, and was subjected to excessive force. (*Id.* at PageID 33).

Plaintiff claims director Mohr took "inadequate mental health actions on July 12, 2017." (*Id.* at PageID 35). In this portion of the complaint, plaintiff claims that he spoke with director Mohr and SOCF Warden Erdos on July 12, 2017. According to plaintiff, Erdos told him he was sick of plaintiff complaining about his CPAP machine and Mohr told him he would get plaintiff mental health treatment, but he never did.

Next, plaintiff claims that "SOCF's prison officials conspired to hinder the plaintiff's peaceful assembled hunger strike and wage a campaign of harassment towarded (sic) the plaintiff's protected conduct." (*Id.* at PageID 34, 36). In this section of the complaint, plaintiff alleges that defendants refused to properly document his refused meals. Plaintiff further claims that defendants falsified incidents, which plaintiff characterizes as "a witchhunt to hinder the plaintiff's peaceful assembled hunger strike." (*Id.* at PageID 37).

Plaintiff next complains that he was transferred to a cell with electricity and was provided with his CPAP machine on August 8, 2017. However, he was only provided with a "half inch cotton bed mat with no cover, with feces, spit on the walls and urine on the floor." (*Id.* at PageID 39). Plaintiff claims that after unsuccessfully requesting mental health treatment, he tried to hang himself. (*Id.* at PageID 41). Plaintiff alleges that defendants Salyers, Cadogan, and "other John Does" conspired to cover up his suicide attempt by not recording the incident.

Plaintiff next alleges that he was denied adequate mental health treatment in the SOCF RTU. (*Id.* at PageID 42). Specifically, plaintiff claims that defendants Baumgardner, Reinhart, Wamhsley, Carter, Bryant, and Jane Doe mental health liaison failed to follow ODRC policy upon his arrival and failed to "properly diagnose the plaintiff's hearing voices depression." (*Id.*). Plaintiff further alleges that he was denied treatment programing and recreation.

Plaintiff next complains that he was transferred from SOCF to WCI on December 26, 2017. According to plaintiff, he was subjected to retaliation at WCI based on his having filed a prior lawsuit filed against SOCF's mental health department. (*Id.* at PageID 46). Plaintiff further alleges that he was subjected to excessive force and denied adequate medical care. (*Id.* at PageID 46–50). Plaintiff asserts that SOCF and WCI were involved in a conspiracy to cover up his mental health issues. (*Id.* at PageID 51).

Finally, plaintiff alleges that he was deprived of adequate medical care while at WCI based on his allegation that he was denied the use of his CPAP machine. (*See id.* at PageID 51–52).

Plaintiff seeks declaratory relief and monetary damages. (*Id.* at PageID 64).[2]

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his First and Eighth Amendment claims against defendants Dillow, Crabtree, and Sears, based on his allegation that these defendants attacked him on January 7, 2017 in retaliation for filing a PREA complaint against defendant Sears; against Holbrook and Smith based on their alleged conduct during the February 2, 2017 strip search; against Smoot based on his allegation that Smoot used excessive force against him on July 28, 2017 in retaliation for filing a PREA complaint; against Rogers for

_____

[2] Based on the above allegations, the complaint outlines plaintiff's legal claims brought against the named defendants, which are discussed below. (*See* Doc. 1-1, Complaint at PageID 53–63).

denying him medical treatment in retaliation for his PREA complaints; and against Bear and

Crabtree based on his allegations that defendants sprayed him with mace in retaliation for filing a

PREA complaint against him.  Plaintiff may also proceed with his Eighth Amendment claims

against defendants Conley, Claggs, Warren, Joiner, Tipton, and Ross, based on his allegation that

these defendants denied him medical care for injuries sustained in the January 7, 2017 incident.

However, plaintiff's remaining claims should be dismissed.  *See* 28 U.S.C. §§ 1915(e)(2)(B) &

1915A(b).

 As an initial matter, plaintiff's claims that are unrelated to the January 7, 2017 alleged

attack or PREA retaliation should be dismissed.  As detailed above, plaintiff has made nearly

seventy pages of factual allegations—spanning from July 19, 2016 through February 25, 2018—

concerning multiple institutions, seventy-seven defendants, and many incidents or issues

unrelated to the January 7, 2017 alleged sexual assault and/or retaliation for utilizing the PREA

hotline.  These allegations include his claim that defendants conspired and/or harassed him for

engaging in a hunger strike and filing lawsuits; plaintiff's claims that he received inadequate

medical care at SOCF, including lack of mental health programing, the inability to use his CPAP

machine, and his security status/placement's impact on his medical care; that SOCF defendants

conspired to cover up his suicide attempt; and his factual allegations concerning the conditions of

his confinement or treatment at WCI, roughly a year after the alleged assault, amongst others.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit.

Under Rule 20(a)(2) "[p]ersons . . . may be joined in one action as defendants if: (A) any right to

relief is asserted against them jointly, severally, or in the alternative with respect to or arising out

of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question

of law or fact common to all defendants will arise in the action."  Therefore, "a civil plaintiff

11

may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law and fact." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009). Permitting a prisoner to assert unrelated claims against different defendants in the same action would undermine the PLRA's purpose of curbing frivolous prisoner filings and dilute the impact of the statute's fee payment and three-strikes provisions. *See Gresham v. Washington*, No. 1:15-cv-1067, 2016 WL 81696, at *7 (W.D. Mich. Jan. 6, 2016) (collecting cases).

In this case, the complaint asserts a multitude of factual allegations, which arise out of different transactions or occurrences, involve the actions of different SOCF, WCI, and ODRC employees, and involve distinct questions of law and fact. *See* Fed. R. Civ. P. 20(a)(2). If plaintiff wishes to pursue his claims that are unrelated to the alleged sexual assault or PREA retaliation, he must do so in separate actions that each comply with Fed. R. Civ. P. 20(a)(2) and after paying the filing fee required to do so. Therefore, plaintiff claims unrelated to the January 7, 2017 attack and/or PREA retaliation should be dismissed without prejudice.[3] *See* Fed. R. Civ. P. 21.

The complaint should also be dismissed against defendants in their official capacities to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not

---

[3] The complaint does not include any factual allegations related to the alleged January 7, 2017 assault and subsequent retaliation against the following named defendants: Mohr, Erdos, Breelove, Carter, Reinhart, Bauers, Haywood, Brennan, Neff, Nurse Mr. John Doe, Sherman, Regional Director Mrs. Miller, Hutchinson, Mr. Sayler, Butterbaugh, Codogan, Mrs. Jane Doe, Goodman, Wanhsley, Baumgardner, Case Manager Miller, Cool, Oppie, Prise, Dr. Sed, Dr. Lahr, Sticklemen, Fry-Jones, Mockabee, Dr. Rahju, Dr. McDerumott, Dr. Walker, Corbett, Nurse Nicole/Jane Doe, Bush, McCaughlin, McGuire, Kiser, Davidson, Vance, Dr. Hyde, Stolica, Ballard, Mrs. Hill, Baker, and Muckabee.

constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.
*See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline
Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to
actions where the state is not a named party, but where the action is essentially one for the
recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of
Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would,
in reality, be a way of pleading the action against the entity of which defendants are agents.
*Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are
included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer
v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010)
(citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit
against a state official is deemed to be a suit against the state and is thus barred by the Eleventh
Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named
defendants are immune from suit in their official capacities to the extent that plaintiff seeks
monetary damages.

Plaintiff's claims regarding his dissatisfaction with the investigation of his complaints
and/or the grievance procedure should also be dismissed. Plaintiff seeks to hold defendants
PREA Investigator Miller, John Doe STG Gang Investigator, Ms. Mahlman, Unit Manager Brian
Sparks, and PREA Manager Chuck Smith liable for their alleged failure to investigate and/or
correct the conduct of other named defendants. (*See* Doc. 1-1, Complaint at PageID 55, 56).
Specifically, plaintiff complains that these defendants failed to adequately address Dunlap,
Bradley, and Hill's alleged conduct. However, "[t]here is no statutory or common law right,
much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th

Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio

July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure

failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison

inmates do not have a constitutionally protected right to a grievance procedure." *Miller v.

Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug.03, 1998) (citations omitted).

Prison officials whose only roles "involve their denial of administrative grievances and their

failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure

to adequately investigate claims of misconduct rise to the level of "encouragement" that would

make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir.

1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff's claims

seeking to hold defendants liable for their failure to correct the actions of others through an

investigation or the grievance process should be dismissed.

Plaintiff also seeks to hold defendants Miller, Smith, and Mahlman liable for their alleged

deliberate indifference to his medical needs, based on his allegation that they did not adequately

notify medical of his injuries and failed to transport plaintiff to an outside emergency hospital.

(Doc. 1-1, Complaint at PageID 29, 57). To state a claim for relief under 42 U.S.C. § 1983 for a

denial of medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference" requires a prison official to both know of and disregard an excessive

risk of serious harm to inmate health; mere negligence, or even gross negligence, will not suffice.

*Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th

Cir. 1999) (en banc). In this case, plaintiff has not made any allegations that suggest that Miller,

Smith, or Mahlman were aware of his injuries or otherwise deliberately indifferent to them. Plaintiff claims that he met with these defendants in the months following the incident concerning alleged retaliation on the part of other correctional officers,[4] but the complaint does not include any allegations that plaintiff informed these defendants of his injuries, requested medical attention from them, or any other facts to suggest that these defendants were deliberately indifferent to his medical needs. Accordingly, plaintiff's deliberate indifference claims should be dismissed against defendants Miller, Smith, and Mahlman.[5]

Plaintiff's conspiracy claims should also be dismissed. Plaintiff alleges that the medical staff engaged in a conspiracy to deprive him of medical treatment following the alleged attack and that the mental health defendants conspired to terminate his housing in the J4 unit because of "PREA retaliation" and other alleged protected conduct. (*See* Doc. 1-1, Complaint at PageID 29, 57, 58). It is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez*

---

[4] Plaintiff claims that he met with Smith and Mahlman on May 16, 2017 and March 14, 2017, respectively, concerning C/O Hill. (*See* Doc. 1-1, Complaint at PageID 24). Plaintiff also claims he met with Miller on February 1, 2017 and discussed officers Bradley and Dunlap. (*Id.* at PageID 24). As with his allegations against Smith and Mahlman, the complaint includes no allegations that plaintiff informed Miller of his injuries, requested medical attention from him, or any other facts suggesting deliberate indifference to his medical needs.

[5] Plaintiff's allegations against defendants Ford and Parsons should also be dismissed. Plaintiff alleges that these defendants violated his Eighth Amendment rights by failing to place him in RTU, being argumentative with him, and for failing to answer other mental health official's calls about plaintiff. (*See* Doc. 1-1, Complaint at PageID 29–30, 57–58). Plaintiff does not dispute defendants' assessment that he was not qualified for RTU treatment and his remaining allegations against these defendants fail to rise to the level of deliberate indifference under the Eighth Amendment.

In addition, the undersigned notes that plaintiff filed a similar claim against defendants Ford and Parsons (amongst others), on the basis that defendants violated his Eighth Amendment rights, in part by failing to place him in the RTU in Case No. 1:16-cv-894. *See Pullen v. Conschafsky*, No. 1:16-cv-894 (S.D. Ohio, Sept. 9, 2016) (Doc. 31 at PageID 363) ("To the extent that plaintiff claims that the defendants failed to place him in the residential treatment unit or otherwise denied him medical care, plaintiff has been permitted to proceed with this claim.").

*v. Lynch,* 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42

U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity").

Here, construing the complaint liberally, plaintiff's factual allegations are insufficient to suggest

that the defendants shared a conspiratorial objective or otherwise planned together to deprive

him of a constitutionally-protected right. Plaintiff alleges in conclusory fashion the existence of

a conspiracy amongst defendants Claggs, Warren, Joiner, Tipton, and Ross, however he does not

allege any facts to suggest a shared conspiratorial objective. (*See* Doc. 1-1, Complaint at PageID

57). Plaintiff similarly provides no factual allegations in support of his conclusory allegation

that defendants Bryant, Salyers, Rogers, Gladman, Smoot, and Sparks "conspired to terminate

the plaintiff Pullen's housing in the J4 Adjustment Mental Health Unit because of plaintiff

Pullen's protected conduct." (*Id.* at PageID 58). Therefore, plaintiff's vague and conclusory

claims based on conspiracy theories lack the requisite specificity to state a cognizable claim

under 42 U.S.C. § 1983.

      Plaintiff's claims against defendants Hill, Dunlap, Bradley, and C/O Gladman[6] should be

dismissed. Plaintiff claims that these defendants used "verbal sexual retaliation threats" against

him. Specifically, plaintiff claims Bradley and Dunlap stated to him "Here he is 'I got raped'"

upon his arrival to the K1 block and subjected him to "verbal sexual retaliation threats;" Hill

mentioned the alleged assault and told plaintiff "shut-up and suck my dick;" and that C/O

Gladman interrupted him and stated that he was tired of hearing plaintiff complain about the

alleged sexual assault. (*Id.* at PageID 21, 24, 25).

---

[6] Plaintiff also names defendant Penix as a defendant in connection with the June 8, 2017 meeting with plaintiff, Gladman, Penix, and Rogers. (*See* Doc. 1-1, Complaint at PageID 25). However, plaintiff does not include any factual allegation against Penix other than his being present at the meeting. Accordingly, Penix should also be dismissed a defendant to this action.

As an initial matter, to the extent that plaintiff intends to hold defendants liable for the use of threats or other insults he has failed to state a viable claim under § 1983, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). Additionally, while prison officials should not use degrading or racist language when interacting with a prisoner, the use of such language does not rise to the level of a constitutional violation. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017).

Plaintiff's allegations against these defendants are also insufficient to state a claim upon which relief may be granted under the First Amendment. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394). In this case, Bradley and Dunlap's mere mention of the January 7, 2017 incident, or Hill and Gladman's isolated comments regarding the alleged assault or PREA complaints do not amount to adverse action

17

that would deter a person of ordinary firmness from continuing to engage in the protected conduct. Plaintiff has otherwise only offered conclusory allegations of being confronted with "countless verbal sexual retaliation threats" or "verbal sexual comment[s]" in the complaint. (*See* Doc. 1-1, Complaint at PageID 21). Without any "further factual enhancement" plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *See Twombly*, 550 U.S. at 555–57. Therefore, plaintiff's allegations do not rise to the level of a constitutional violation and his retaliation claims against these defendants should be dismissed.[7]

Accordingly, in sum, plaintiff may proceed with his First and Eighth Amendment claims against defendants Dillow, Crabtree, and Sears, based on his allegation that these defendants attacked him on January 7, 2017 in retaliation for filing a PREA complaint against defendant Sears; against Holbrook and Smith based on their alleged conduct during the February 2, 2017 strip search; against Smoot based on his allegation that Smoot used excessive force against him on July 28, 2017 in retaliation for filing a PREA complaint; against Rogers for denying him medical treatment in retaliation for his PREA complaints; and against Bear and Crabtree based on his allegations that they sprayed him with mace in retaliation for filing a PREA complaint against him. Plaintiff may also proceed with his Eighth Amendment deliberate indifference claims against defendants Conley, Claggs, Warren, Joiner, Tipton, and Ross.

---

[7] Plaintiff has also alleged that defendant C/O Johnson denied him a shower on one occasion, allegedly in retaliation for protected conduct. (*See id.* at PageID 26). This allegation also does not rise to the level of a constitutional violation. *See Phelan v. Durniak*, No. 9:10-cv-666, 2014 WL 4759937, at *16 (N.D.N.Y. Sept. 24, 2014) ("the loss of a single shower is too *de minimis* in that it would not deter a similarly situated individual of ordinary firmness from exercising their constitutional rights") (collecting cases).

However, plaintiff has failed to submit service copies of the complaint, summons forms, or United States Marshal forms so that service may be issued on these defendants. Accordingly, plaintiff is **ORDERED** to provide service copies of the complaint, summons forms, and United States Marshal forms for defendants Dillow, Crabtree, Bear, Sears, Hollbrook, Smith, Smoot, Rogers, Conley, Claggs, Warren, Joiner, Tipton, and Ross. Upon receipt of the completed summons forms, United States Marshal forms, and copies of the complaint from plaintiff, the Court shall order service of process by the United States Marshal in this case.

Having found that plaintiff's claims against the remaining defendants to be improperly joined or that plaintiff fails to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed. The undersigned notes that plaintiff's claims that are unrelated to the alleged January 7, 2017 attack and subsequent retaliation should be dismissed without prejudice. *See* Fed. R. Civ. P. 21. The claims addressed herein which fail to state a claim upon which relief may be granted should be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's claims that are unrelated to the alleged January 7, 2017 attack and subsequent retaliation should be **DISMISSED without prejudice.** *See* Fed. R. Civ. P. 21.

The complaint otherwise be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's First and Eighth Amendment claims against defendants Dillow, Crabtree, Sears, Holbrook, Smith, Smoot, Rogers, Conley, Claggs, Warren, Joiner, Tipton, and Ross.

**IT IS THEREFORE ORDERED THAT:**

Within **thirty (30) days** of receipt of this Order, plaintiff is **ORDERED** to submit service copies of the complaint, as well as completed summons and Unites States Marshal forms for defendants Dillow, Crabtree, Bear, Sears, Hollbrook, Smith, Smoot, Rogers, Conley, Claggs, Warren, Joiner, Tipton, and Ross.  The Clerk of Court is **DIRECTED** to send to plaintiff a copy of the complaint, summons forms and United States Marshal forms for this purpose.  Upon receipt of the completed summons and United States Marshal forms, the Court shall order service of process by the United States Marshal in this case.

Date: _7/9/18_

Karen L. Litkovitz
United States Magistrate Judge

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY LEE PULLEN,                              Case No. 1:18-cv-386
    Plaintiff,

                                    Dlott, J.
vs.                                          Litkovitz, M.J.

DIRECTOR GARY C. MOHR, *et al.,*
    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).